**Edward WEAVER, Petitioner–Appellee,**

v.

**S. Frank THOMPSON, Respondent–Appellant.**

**No. 98–35867.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1999

Filed Nov. 24, 1999

Douglas F. Zier, Assistant Attorney General, Salem, Oregon, for the respondent-appellant.

Steven T. Wax, Federal Public Defender, Portland, Oregon, for the petitioner-appellee.

Before: FLETCHER, and TASHIMA, Circuit Judges, and ISHII,[1] District Judge.

FLETCHER, Circuit Judge:

S. Frank Thompson, Superintendent of the Oregon State Penitentiary ("Respondent"), appeals from the district court's

---

1. The Hon. Anthony Ishii, U.S. District Judge for the Eastern District of California, sitting by designation.

order granting Edward Weaver's petition for a writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 2253(a) and affirm.

## BACKGROUND

■ On June 23, 1992, an Oregon state court jury tried and convicted Weaver of two counts of rape in the first degree and two counts of sexual abuse in the first degree. In evaluating Weaver's habeas petition and this appeal, our attention focuses on the jury's deliberation process.[2]

Weaver's trial began on the morning of June 23, 1992. The trial concluded that same afternoon, with the jury retiring to deliberate at approximately 4:30 p.m. At approximately 8:30 p.m., the jury sent out a note containing an inquiry for the presiding judge. Exactly what the note said is unclear, as it was subsequently misplaced by the court and was not made part of the record. In any event, because the judge had left the courthouse, the bailiff relayed the contents of the note to him by phone. The judge indicated that he would return to the courthouse immediately to discuss the contents of the note with counsel. Prior to the judge's arrival, however, the bailiff conversed with the jurors. As will be discussed below, what exactly the bailiff said to the jury is the subject of some dispute. Within five minutes of the bailiff's intercession, however, the jury reported that it had reached verdicts on all counts. Upon arriving at the courthouse, the judge was informed that the jury had reached a verdict. At that time, he considered the matter of the jury's note to be moot, and mentioned it neither to the jury, nor to counsel. The jury returned guilty verdicts against Weaver on all four counts.

One week later, the judge received a letter from one of the jurors, Joan Haller, in which she voiced her concerns about the deliberation process:

... Most votes taken of the four different charges against Mr. Weaver were 3–9, 4–8, 5–7 by secret ballot. Only when we asked the bailiff to call you and she reported back to us that we had to reach a decision that night did the tally come up 2–10.

Half the group wanted to leave at 5 pm and return the next day with a clear mind and body. The other half that wanted to finish that night had a vocal juror, Teresa, and she just kept repeating "Oh this won't take long" and kept the conversation going. Since we had agreed in the courtroom to come back a second day, I believe we should have held to that previous commitment and not found a person guilty (perhaps ruining his life) when there was a reasonable doubt in several minds. Physical discomfort and lateness of the hour should not have been factors. . . .

At this point, the judge decided to disclose to counsel by letter the events that transpired during the jury's deliberations. After receiving the judge's account of events, along with a copy of Haller's letter, Weaver's counsel asked to see a copy of the jury note and suggested that the court contact Haller in order to get her account of the events on the record. In defense counsel's words, "I suspect that it will not take a great deal of probing to determine what in fact occurred." The judge refused defense counsel's request. Weaver's counsel then made a formal motion for a new trial, alleging that Weaver's rights had been materially affected by irregularity in the proceedings and jury misconduct. Referring to Haller's letter and the judge's account of the deliberations, defense counsel contended that the jury's deliberations had been tainted by the bailiff's instruction to the jurors that they had to "reach a decision that night." The judge denied the motion for a new trial.

**2.** In his original habeas petition, Weaver also alleged that he had received ineffective assistance of counsel during his trial. Weaver later withdrew his ineffective assistance claim, and it is not before us in this appeal.

On direct appeal, Weaver challenged only one aspect of his conviction: he contended that, in light of the factual uncertainties surrounding the bailiff-jury communication, the trial court erred by refusing to question the jurors regarding the deliberations and by denying his motion for a new trial. The Oregon Court of Appeals affirmed Weaver's conviction without opinion, *State v. Weaver*, 126 Or. App. 545, 871 P.2d 133 (Or.Ct.App.1994), and the Oregon Supreme Court subsequently refused to review the appellate court's decision, *State v. Weaver*, 319 Or. 36, 876 P.2d 782 (Or.1994). Weaver renewed his objections to the bailiff-juror contact in a petition for post-conviction relief in state court, which was denied. The Oregon Court of Appeal affirmed without opinion, *Weaver v. Maass*, 140 Or.App. 645, 917 P.2d 78 (Or.Ct.App. 1996), and the Oregon Supreme Court again denied review, *Weaver v. Maass*, 323 Or. 535, 929 P.2d 313 (Or.1996). At no time during the state court proceedings did any court hold an evidentiary hearing to ascertain the contents of the jury note, the substance of the bailiff's comments to the jury, or the effect, if any, of the bailiff's comments on the jury's deliberations.

On March 26, 1997, Weaver filed a petition for writ of habeas corpus in federal district court. On April 17, 1998, nearly six years after Weaver's trial, the district court conducted an evidentiary hearing, at which each of the twelve state court jurors appeared and testified. Although the testimony was conflicting, the district court found that, despite the statement to the contrary in juror Haller's letter, the bailiff had not told the jurors that they had to stay until they reached a verdict. Instead, the court made the following factual findings:

> While the jury was out, they asked a question whether they had to reach a verdict on all counts. That question was

referred to the trial judge (who presently has no memory of anything that transpired during these exchanges), who instructed his bailiff to advise the jury that they must arrive at a verdict on all counts. The prosecution, defense counsel, and the defendant were not notified of this question, nor of the court's direction to the bailiff. The jury was also concerned whether they needed to reach a decision that evening or could recess to the next day. The jury was aware that it could recess for [sic] the next day, but elected to decide the case that evening on all counts.

Based on these findings, the district court granted Weaver's petition for writ of habeas corpus and vacated his convictions. Respondent now appeals.

## DISCUSSION

 We review the district court's findings of fact for clear error, *see Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir. 1996), and its decision to grant habeas corpus relief *de novo*, *see Santamaria v. Horsley*, 133 F.3d 1242, 1244 (9th Cir.) (en banc), *amended*, 138 F.3d 1280 (1998). We may affirm on any ground supported by the record, even if it differs from the rationale of the district court. *See Moran*, 80 F.3d at 1268. Weaver's petition for habeas corpus was filed after the effective date of, and thus is subject to, the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

## I. Disputed Facts

The disposition of Weaver's petition turns on a single crucial factual question: What did the bailiff say to the jury? As noted above, the district court held an evidentiary hearing to resolve this question and made certain factual findings based on the testimony it received.[3] Spe-

---

**3.** Respondent does not challenge the district court's decision to hold an evidentiary hear-

ing, and thus we need not test this decision against the requirements of 28 U.S.C.

363

cifically, the district court found that the jury in its note had inquired whether a verdict had to be reached on all counts. The district court also found that the judge answered this question in the affirmative, and that this message was relayed by the bailiff to the jurors.

■ Respondent argues that the district court's account was at odds with the state court's findings, and that the district court erred by failing to defer to those findings.[4] The AEDPA instructs federal courts that, in habeas proceedings brought by state prisoners, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). It is difficult, however, to discern what state court "factual finding" Respondent is referring to here. As mentioned earlier, at no time during the state proceedings in this case was an evidentiary hearing ever held on Weaver's claim of tainted deliberations. The only state court account of the relevant events that we have been able to uncover comes in the form of the trial judge's letter to counsel disclosing the irregularity in deliberations.[5] First, we note that the account of events contained in the trial judge's letter is not necessarily at odds with the district court's factual findings. More importantly, however, we conclude that the trial judge's letter is not a "factual determination" within the meaning of § 2254(e)(1), and thus is

not entitled to deference. The statements contained in the letter, in addition to being hearsay, were not subject to any of the usual judicial procedures designed to ensure accuracy. The judge was not under oath when he wrote the letter, the bailiff was not under oath when relaying her account of events to the judge, and neither the judge nor the bailiff was ever questioned by counsel for either side. At most, the trial judge's letter constitutes merely evidence of what occurred during the jury's deliberations, evidence that the district court properly considered during the proceedings below.

In the absence of any "factual determinations" meriting deference under 28 U.S.C. § 2254(e)(1), we review the district court's factual findings for clear error. After reviewing the record, we find no clear error with respect to the factual determinations relevant to Weaver's habeas petition.[6] Accordingly, in evaluating Weaver's habeas petition, we accept the district court's factual findings.

## II. Exhaustion and Procedural Default

■ Respondent's primary argument is that the district court erred by grounding its decision on a claim that Weaver never presented during the state court proceedings. Subject to a few exceptions not at issue here, a petitioner who is in state

§ 2254(e)(2). *See Baja v. Ducharme*, 187 F.3d 1075, 1078–9 (9th Cir.1999) (discussing § 2254(e)(2)'s standards governing habeas petitioner's request for an evidentiary hearing). In any event, the record here amply demonstrates that Weaver did not "fail to develop" the factual basis of his claim within the meaning of § 2254(e)(2), and thus the district court was within its authority in ordering an evidentiary hearing. *See id.*

4. Respondent has not argued that the district court erred by failing to defer to any state court legal determinations. *See* 28 U.S.C. § 2254(d).

5. The letter includes the following description of events:
 [T]he jury sent a note stating that they had reached a verdict on three of the counts and inquired as to whether they needed to

continue to deliberations on the fourth count. My [bailiff] called me and told me the contents of that note. I told her that I would come to the Courthouse immediately and discuss the contents of the note with counsel. She tells me that she informed the jury to continue to deliberate but if they were unable to reach a verdict to report that fact.

6. The only factual finding that Respondent challenges as "clearly erroneous" relates to whether the jury was deadlocked when it sent out its note. As discussed below, whether the jury was deadlocked is irrelevant to the resolution of Weaver's petition, and thus we need not inquire whether the district court's finding was in error.

custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must first exhaust state judicial remedies. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is based on principles of comity. In the words of the Supreme Court, "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a fair opportunity to consider each issue before presenting it to the federal court. *See id.* at 276, 92 S.Ct. 509; *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir.1996). The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. *See Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (legal basis); *Correll v. Stewart*, 137 F.3d 1404, 1411–12 (9th Cir.1998) (factual basis).

■ Respondent argues that the claim presented to the state courts by Weaver was one of bailiff misconduct, based on the factual assumption that the bailiff told the jury that it could not adjourn for the night without reaching a verdict. After the evidentiary hearing, the district court concluded that this is not what, in fact, transpired. The district court concluded that the jury knew that it was free to adjourn for the evening, but that the bailiff had instructed the jury that it needed to reach a verdict on all counts. Respondent contends that these facts, which formed the basis for the district court's decision granting habeas relief, went to a claim of "trial court error" distinct from the "bailiff misconduct" claim that Weaver had pressed before the state courts.

We reject Respondent's argument as unwarranted hairsplitting. Here, throughout his post-conviction proceedings, Weaver has consistently pressed one claim. In his original state court petition for post-conviction relief, he put it thus: "Petitioner's constitutional rights to due process and equal protection of the law were violated as a result of misconduct by the bailiff and/or the jurors." He pressed this same claim before the court of appeals and the state supreme court. At each step, Weaver argued that the bailiff's contact with the jury had a coercive effect, thus violating his due process and equal protection rights.

We acknowledge that the precise factual predicate for Weaver's claim changed after the district court conducted its evidentiary hearing. "However, new factual allegations do not render a claim unexhausted unless they 'fundamentally alter the legal claim already considered by the state courts.'" *Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)). The facts adduced at the evidentiary hearing did not "fundamentally alter" Weaver's claim. The factual basis for the claim remained rooted in the same incident: the bailiff's contact with the jury after it sent out its note. *See id.* at 1469 (where defendant was misadvised regarding consequences of plea agreement, whether errors were attributed to defense counsel or improper translation held irrelevant to exhaustion); *Miller v. Estelle*, 677 F.2d 1080, 1083 (5th Cir.1982) (claim properly exhausted where evidence developed for the first time in district court revealed incidents of improper jury contact that differed in number, but not in kind). As noted above, Weaver's inability to fully explore what transpired during that incident stemmed from the state courts' refusal to grant him an evidentiary hearing on the matter, rather than from any failure of diligence on his part. The legal basis for Weaver's claim, moreover, remained unchanged. Whether the bailiff's instruction was coercive because it

required the jury to continue deliberating, as originally believed, or because it required a verdict on all counts, as the district court found, the underlying claim of improper jury coercion remains the same. Given the state courts' consistent refusal to grant him an evidentiary hearing, we conclude that Weaver "fairly presented" the substance of his federal claim to the state courts, and thus properly exhausted his claim within the meaning of § 2254(b)(1).

## III. The Merits

▪ Turning to the merits, we must determine whether Weaver has established that an error of constitutional dimension "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation omitted); *accord Rodriguez v. Marshall*, 125 F.3d 739, 744 (9th Cir.1997), *cert. denied*, 524 U.S. 919, 118 S.Ct. 2304, 141 L.Ed.2d 163 (1998). We may uphold the district court's grant of habeas relief only if we conclude that the error substantially affected the jury's decision, or that the record is so evenly balanced that we are in grave doubt on the matter. *See Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir.) (en banc), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). Weaver argues that the bailiff's statement to the jurors—that they were required to reach a verdict as to all four counts—amounted to a de facto *Allen* charge. *See Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896). It is Weaver's position that, in light of the totality of the circumstances, this instruction had an improperly coercive effect on the jury, thus infringing his due process right to an impartial jury and fair trial.[7]

▪ "An *Allen* charge is traditionally understood as an instruction to work towards unanimity." *Rodriguez v. Marshall*, 125 F.3d 739, 750 (9th Cir.1997), *cert. denied*, 524 U.S. 919, 118 S.Ct. 2304, 141 L.Ed.2d 163 (1998). In the archetypal *Allen* charge context, the judge instructs a deadlocked jury to strive for a unanimous verdict. *See Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam); *Allen*, 164 U.S. at 501, 17 S.Ct. 154. There is, however, nothing talismanic about any single element either making the charge valid or invalid; the fundamental question is whether the jury was improperly coerced, thus infringing the defendant's due process rights. Accordingly, courts have not hesitated to apply an *Allen* charge analysis where the instruction is delivered by someone other than the judge, *see, e.g., United States ex rel. Tobe v. Bensinger*, 492 F.2d 232, 238 (7th Cir.1974) (bailiff), where the jury has not yet reached a deadlock, *see, e.g., United States v. Wills*, 88 F.3d 704, 716–17 (9th Cir.1996) (*Allen* charge included in original jury charge), or where the improper coercion is implicit in the circumstances, rather than explicit in a formal instruction, *see, e.g., Jiminez*, 40 F.3d at 980 (recognizing "de facto" *Allen* charge). So long as the defendant has offered facts that fairly support an inference that jurors who did not agree with the majority felt pressure from the court to give up their conscientiously held beliefs in order to secure a verdict, we must proceed to the *Allen* charge analysis.

▪ Weaver has raised an inference of improper pressure here. The jurors, not yet having reached a verdict on all counts, sent out a note to the judge inquiring whether they must decide all counts. The note, moreover, was sent out at 8:30 p.m., after a full day of trial followed by four hours of deliberations. After departing to deliver the note to the judge, the bailiff

---

7. Weaver also contends that the bailiff-jury communication here constitutes a "structural error" not subject to harmless error analysis. *See United States v. Noushfar*, 78 F.3d 1442, 1445 (9th Cir.1996), *amended*, 140 F.3d 1245 (9th Cir.1998). Because we affirm the district court's decision on other grounds, we express no opinion on Weaver's "structural error" argument.

returned and informed them that they were required to return a verdict as to all four counts. Five minutes later, the jury reached guilty verdicts on all counts. It requires no imagination to comprehend that these events may have altered the minority jurors' views of the deliberations. Had their inquiry been properly answered, they would have understood their task to be one of conscientiously coming to and abiding by their own decision, even if this resulted in a hung jury as to some counts. Based on the erroneous instruction received from the bailiff, their task was, as to each count, to yield to the majority or keep at it until they persuaded the majority to join their position that acquittal was warranted.[8] In effect, the minority jurors were told that they had two choices: give in to the majority position, or manage the same coup pulled off by Juror #8 in *Twelve Angry Men*.[9]

"The general test of whether a supplemental jury instruction is in error is to consider all the circumstances to determine if the instruction was coercive." *Jiminez*, 40 F.3d at 980. After reviewing the record, we determine *de novo* the constitutional weight to be given the facts. *See id.* Four factors assist us in structuring the inquiry: 1) the form of the jury charge, 2) the amount of time of deliberation following the charge, 3) the total time of deliberation and, 4) other indicia of coerciveness or pressure. *See Wills*, 88 F.3d at 717. Turning to the first factor, we note that the bailiff's message was delivered without the benefit of an offsetting cautionary instruction informing jurors

that they need not give up their conscientiously held views. *See United States v. Plunk*, 153 F.3d 1011, 1027 (9th Cir.1998) (upholding *Allen* charge that included offsetting cautionary instruction). As to the second and third factors, we are presented with a situation where four hours of deliberations produces an inquiry regarding whether all counts must be decided, followed by five minutes of deliberation after the bailiff delivers her erroneous answer. This suggests that the bailiff's instruction influenced the jury's decision. In connection with the fourth "catchall" factor, we observe that the jurors' lengthy day and the lateness of the hour would make them susceptible to influence. Finally, we find it noteworthy that the jurors' votes appear to have remained in flux until the very end, even after the oral verdict was delivered in open court, suggesting that minority jurors were ambivalent and thus susceptible to pressure.[10] Given the totality of the circumstances presented here, we conclude that "the charge had an impermissibly coercive effect on the jury." *Id.*

Respondent responds by arguing that only one of the four counts was tainted by coercion, and thus that the constitutional error was harmless. *See Brecht*, 507 U.S. at 637, 113 S.Ct. 1710 (error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict"); *Duckett v. Godinez*, 109 F.3d 533, 535 (9th Cir.1997) (same). Respondent relies on two items in the record to support this argument. First, Respondent notes that the state trial court judge, in his initial letter to counsel disclosing the

8. In view of this, we give reduced weight to the juror's subjective impressions regarding whether they felt coerced. The instructions delivered by the bailiff may well have reduced the pressure that minority jurors felt by clarifying their task. The instruction, however, was erroneous, and thus any effect it had on the verdict must be considered improper, irrespective of the subjective impressions of the jurors.

9. In the film version of TWELVE ANGRY MEN (United Artists 1957), Henry Fonda plays Juror #8, the lone holdout juror in a murder

trial. Aided by a keen mind, an uncanny eye for detail, and impressive persuasive powers, he manages over the course of the deliberations to bring the remaining eleven jurors around to his position, securing a unanimous verdict of "not guilty."

10. The record indicates that the precise configuration of votes on the various charges changed between the delivery of the oral verdicts and the subsequent completion of the jury poll.

irregularity in deliberations, states that the jury had decided 3 of the 4 counts prior to sending out its note. The judge, however, does not indicate how he learned this—whether from the bailiff, from the jury note, or from juror Haller's letter. Respondent also points to Haller's letter, which includes the following: "Most votes taken of the four different charges against Mr. Weaver were 3–9, 4–8, 5–7 by secret ballot. Only when we asked the bailiff to call you and she reported back to us that we had to reach a decision that night did the tally come up 2–10." Noting that the jury poll revealed only one count decided by a 2–10 vote, Respondent deduces that this was the only count on which the jury had not yet rendered a verdict at the time they sent out the note. The record, however, does not paint so simple a picture. As noted earlier, the record suggests that the jury remained in flux right up until the jury poll was completed. Juror Haller's letter suggests that the jury remained undecided as to all four counts at the time it sent the note to the bailiff: "Most votes taken of the four different charges against Mr. Weaver were 3–9, 4–8, 5–7 by secret ballot." In light of the entire record, we decline Respondent's invitation to find harmless error based on deductions from very shaky evidence.

## CONCLUSION

We agree with the district court that the bailiff's comments to the jury amounted to an improper de facto *Allen* charge, violative of Weaver's due process rights, and that the error had a substantial and injurious effect on the jury's verdict. Accordingly, Weaver is entitled to habeas relief, and the decision of the district court is AFFIRMED.