**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10249 |
| *Plaintiff-Appellee*, | D.C. No. 4:18-cr-02220-RM-EJM-3 |
| v. | |
| ROBERT B. SPROAT, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the District of Arizona
Rosemary Márquez, District Judge, Presiding

Argued and Submitted November 14, 2023
San Jose, California

Filed December 28, 2023

Before: Susan P. Graber, Richard A. Paez, and Michelle T.
Friedland, Circuit Judges.

Opinion by Judge Graber

# SUMMARY[*]

## Criminal Law

The panel affirmed Robert Sproat's securities fraud conviction in a case in which Sproat argued that the district court improperly coerced the jurors into reaching a unanimous guilty verdict by sending them home at 4:30 p.m. with the instruction to return the next day.

The panel was not persuaded by Sproat's argument that the instruction to return was the equivalent of an Allen charge. The panel wrote that simply excusing the jurors for an evening recess did not equal an instruction to them to strive for a unanimous verdict. And even if the jury had been firmly deadlocked, instructing them to return the next day— without more—would not have been the equivalent of an Allen charge. The panel noted that the late-afternoon instruction did not convey that the jurors were required to continue to deliberate the next day; the district court did not ask the jury to identify the nature of its impasse or the vote count before excusing the jurors for the evening; and any theoretical risk of coercion was cured by the partial Allen instruction that the district court gave the following day, an instruction that Sproat endorsed.

The panel rejected Sproat's other arguments in a separate memorandum disposition.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Thomas S. Hartzell (argued), T.S. Hartzell Attorney at Law, Tucson, Arizona, for Defendant-Appellant.

Terry Michael Crist, III, (argued), Assistant United States Attorney; Christina M. Cabanillas, Deputy Appellate Chief; Gary M. Restaino, United States Attorney, District of Arizona; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

## OPINION

GRABER, Circuit Judge:

Defendant Robert Sproat engaged in a securities fraud scheme by promising his victims profitable, low-risk returns on dubious ventures that never materialized. A jury convicted him on ten counts of securities fraud. He appeals, and we affirm. In this opinion, we address and reject Defendant's argument that the district court improperly coerced the jury into returning guilty verdicts.[1]

FACTUAL AND PROCEDURAL HISTORY

A federal grand jury indicted Defendant and two co-defendants, Robert Moss and Jeffrey McHatton, on ten counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5. Moss pleaded guilty, and Defendant and McHatton proceeded to a joint trial.

---

[1] In a separate memorandum disposition, we reject Defendant's other arguments.

The superseding indictment alleged that all three defendants fraudulently promoted and sold securities in various ventures, including the recovery of hidden gold in the Philippines, the procurement of low-alpha lead in South and Central America, and the processing of a large diamond in Africa. Defendants allegedly promised investors 500% returns on some of the supposed ventures, even though the Fortitude Foundation, the Christian foundation that the defendants purported to represent, was in default and had failed to fund an earlier promised joint venture.

Trial began on June 24, 2022. The jury started its deliberations two-and-a-half weeks later, at about 2:00 p.m. on July 12, 2022. The next day, July 13, at 2:42 p.m., the jury sent the judge a note stating: "After reviewing the evidence and discussion, the jury is at an impasse. We need advice as to next steps." The judge responded with a question: "Would coming back tomorrow help you?" The jury responded at 3:30 p.m.: "No, we don't think breaking today and resuming tomorrow will change our impasse."

The parties then met with the judge, beginning at 4:18 p.m. The government sought an Allen charge.[2] Defendant and his co-defendant objected. The judge noted the late

---

[2] "The term 'Allen charge' is the generic name for a class of supplemental jury instructions given when jurors are apparently deadlocked . . . . In their mildest form, these instructions carry reminders of the importance of securing a verdict and ask jurors to reconsider potentially unreasonable positions. In their stronger forms, these charges have been referred to as 'dynamite charges,' because of their ability to 'blast' a verdict out of a deadlocked jury." United States v. Berger, 473 F.3d 1080, 1089 (9th Cir. 2007) (citations and internal quotation marks omitted); see also Weaver v. Thompson, 197 F.3d 359, 365 (9th Cir. 1999) ("In the archetypal Allen charge context, the judge instructs a deadlocked jury to strive for a unanimous verdict.").

hour—"the problem is it's 4:22 right now"—and decided to bring the jury into the courtroom. The judge then had the following exchange with the presiding juror, Juror 37:

> THE COURT: . . . Juror 37, in your opinion, is the jury unable to agree on a verdict as to one or more counts?
>
> JUROR 37: Yes.
>
> THE COURT: And is there any reasonable possibility -- probability that the jury could reach a unanimous verdict on all counts if you were sent back to the jury room for further deliberation?
>
> JUROR 37: At this time we have said that, no, not a unanimous verdict on all counts.
>
> THE COURT: And would you be able -- do you believe that there is a reasonable poss- -- probability that you would be able to reach a unanimous verdict on all counts if you came back tomorrow and continued your deliberations?
>
> JUROR 37: When we posed that to the group, the answer was no, from a minority of us, that no amount of deliberating would change a decision.
>
> THE COURT: And is that -- as to all jurors, is there anyone that disagrees with the answers provided by your foreperson, Juror Number 37?
>
> (Jurors shaking their heads.)

THE COURT:  If I can see a show of hands, is there anyone that disagrees?  Can I see a show of hands, does everyone agree with Juror 37?  I see all hands.

At a sidebar, the parties again disputed whether the court should give an Allen charge.  The judge conferred again with the foreperson and told the jury:

THE COURT:  Juror 37, is there unanimous agreement as to some of the counts?

JUROR 37:  No.

THE COURT:  Well, it is 4:30, I am going to let the parties -- I am going to excuse the jurors for evening recess, and I'll see you tomorrow at 9:00 o'clock.  I will see you tomorrow at 9:00 o'clock.  Does 9:30 work?  Jurors, does 9:30 work better for you?

JUROR 37:  I think 9:30 is less stressful on all of us.

THE COURT:  Yes, let's do 9:30 then.  We'll see you tomorrow at 9:30.

Thank you.

(Jury out.)

THE COURT:  Thank you.  I'll see counsel tomorrow at 9:30.  I think at 9:30 tomorrow, when they are here, I am more inclined to

give them the <u>Allen</u> charge and then send them back for further deliberation.

Defendant's lawyer raised a "strong protest and objection." He explained: "It's almost as though they would be here ad infinitum until they reach a decision. And it is coercive. And I just want the Court to register my strong, my strenuous objection."

The next morning, July 14, 2022, Juror 37 sent a note at 9:35 a.m., stating: "We would like to continue to try to deliberate." The judge proposed to counsel that she give a partial <u>Allen</u> charge, cautioning the jurors not to change an honest belief. The judge also explained why she had asked the jury to return:

> THE COURT: . . . [T]he reason I asked them to come back last night was because the length of the trial, you know, we've been in trial for two and a half weeks. We've had -- I don't know how many witnesses. I think [the bailiff] was going to look it up. But we've had a number of witnesses and victims in this case, and a 10-count indictment, or 10 counts for each defendant, on a complex case. And in looking at their responses, from Juror Number 37 yesterday, she emphasized that they would not be able to reach a verdict on all counts. So she hesitated on the "all." And when I asked her about -- she emphasized the "all." And when I asked her about the -- the second time, if they were able to reach -- when I asked her if they would be able to reach a verdict on any of the counts, there was

> hesitation there. So that's why I asked them to come back.
>
> But by asking them to come back, I don't want to convey that I am forcing them to reach a verdict. So that's why I think that [a partial Allen charge is warranted].

The government sought a full Allen charge. McHatton asked for minor wording changes. For his part, Defendant's lawyer had "no objection to the proposed language" and asked the court to "give the proposed instruction as quickly as possible." But Defendant's lawyer also reiterated his earlier objection: "[B]y bringing them back today, that was the functional equivalent of an Allen charge: Come on back and deliberate some more. I believe they already feel sufficiently coerced."

The judge brought the jury back into the courtroom and instructed them:

> THE COURT: . . . Thank you, ladies and gentlemen, for coming back.
>
> I did receive your note indicating that you would like to continue to deliberate, but I just want to make sure you understand that by asking to you [sic] return today, I do not want to convey that you must deliberate until you reach a unanimous verdict. You should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict. If at any time today you feel you would not be able to reach

> a unanimous verdict, please let [the bailiff] know and you will be excused.
>
> But thank you for agreeing to continue with your deliberations, and you are excused. You may go follow [the bailiff] and continue with your deliberations.

The jury deliberated for the remainder of that day and into the next day, July 15, 2022. That afternoon, the jury convicted Defendant and McHatton on all counts. The district court sentenced Defendant to 30 months' imprisonment, to be followed by three years of supervised release. Defendant timely appeals.

## DISCUSSION

"Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." Lowenfield v. Phelps, 484 U.S. 231, 241 (1988). "[A]n instruction is unconstitutionally coercive if it denies a defendant the due process right to a trial by a fair and impartial jury." DeWeaver v. Runnels, 556 F.3d 995, 1007 (9th Cir. 2009). We review de novo whether a judge has improperly coerced a jury's verdict, a mixed question of law and fact. United States v. Berger, 473 F.3d 1080, 1089 (9th Cir. 2007). In determining whether the jury was improperly coerced, we must "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.'" Lowenfield, 484 U.S. at 237 (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965) (per curiam)); see also Berger, 473 F.3d at 1090 (holding that we review the "totality of the circumstances" and that no single factor is "talismanic" (citations and internal quotation marks omitted)).

Defendant argues that the court improperly coerced the jurors into reaching a unanimous guilty verdict by sending them home at 4:30 p.m. on July 13, 2022, with the instruction to return the next day. We disagree.

Ordinarily, it is not unconstitutionally coercive merely to instruct a jury that has informed the court of an impasse to return the next day. And we are not persuaded by Defendant's argument that the instruction to return was the equivalent of an Allen charge. To be sure, the court was considering an Allen charge. But simply excusing the jurors for an evening recess did not equal an instruction to them to strive for a unanimous verdict. Although Defendant argues that the command to return amounted to an Allen charge because the jury was hopelessly deadlocked, the record gives us reason to question that premise. The judge perceived that Juror 37 hesitated when saying that the jury would not be able to reach a verdict.

But even if the jury had been firmly deadlocked, instructing them to return the next day—without more— would not have been the equivalent of an Allen charge. When a defendant "offer[s] facts that fairly support an inference that jurors who did not agree with the majority felt pressure from the court to give up their conscientiously held beliefs in order to secure a verdict," the court "must proceed to the Allen charge analysis." Weaver v. Thompson, 197 F.3d 359, 365 (9th Cir. 1999). Defendant has not offered such facts here. Telling the jurors to return the next day neither explicitly nor implicitly encouraged them to reach a unanimous verdict. See Jiminez v. Myers, 40 F.3d 976, 980–81 (9th Cir. 1993) (per curiam) (concluding that, because the district court "effectively instructed the jurors to make every effort to reach a unanimous verdict," the "comments and conduct amounted to giving the jury a de facto Allen

charge"). Nor did the jury's note to the court, the foreperson's comments, or the court's responses identify or in any way target jurors with minority views. The record, therefore, does not support treating the court's instruction as an Allen charge.

Even if an instruction to return could be coercive in certain circumstances, it was not coercive here. First, the late-afternoon instruction did not convey that the jurors were required to continue deliberating the next day; the next day, the court might have decided to excuse the jury after concluding that no further deliberation was called for. Crucially, the jury understood the judge's instruction to be nothing more than a recess for the day. When the jury returned the next morning, it sent a note stating: "We would like to continue to try to deliberate." Had the jurors understood the judge's instruction the previous afternoon to require them to continue deliberating, the jurors would not have asked to continue to deliberate.

Second, the court did not ask the jury to identify the nature of its impasse or the vote count before excusing the jurors for the evening. In other jury coercion cases, we have considered whether the district court "asked the jury to identify areas or issues of disagreement." United States v. Della Porta, 653 F.3d 1043, 1050 (9th Cir. 2011); see, e.g., id. at 1050–51 (holding that there was no jury coercion where no Allen charge was given and where the "district court did not extract from the jury information about its fact-finding process" and "never asked the jury to reveal the nature of its deadlock in the first instance" before ordering supplemental arguments). Rather, the judge's inquiries here were limited to establishing that the jury was at an impasse and clarifying that there was no unanimity as to any counts. After bringing the jury back into the courtroom, the judge

first inquired if, in the foreperson's opinion, the jury was unable to agree on a verdict as to any counts. The judge then asked for a show of hands from the other jurors to ascertain that the other jurors agreed with the foreperson that further deliberation would not change the impasse. Finally, the judge confirmed with the foreperson that there was not unanimous agreement as to any counts. At no point during those exchanges with the jurors did the court ask the jury to reveal vote counts, "areas of disagreement," or "specific factual matters on which it disagreed." Id. at 1050.

Finally, any theoretical risk of coercion was cured by the partial Allen instruction that the court gave the following day, an instruction that Defendant endorsed. The judge said: "I just want to make sure you understand that by asking [you to] return today, I do not want to convey that you must deliberate until you reach a unanimous verdict. You should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict. If at any time today you feel you would not be able to reach a unanimous verdict, please let [the bailiff] know and you will be excused." The court thus emphasized the possibility that the jurors would not reach a unanimous verdict, the command that the jurors should not change an honest belief, and the assurance that the jurors could be excused at any time if they concluded that they could not overcome their earlier impasse. Thus, the court's instruction the next day ameliorated any coercive effect that might have resulted from sending the jurors home and instructing them to return. See Berger, 473 F.3d at 1090 ("[T]he ameliorative instruction cured any coerciveness that may have resulted from the judge's informal comments to the jurors.").

**AFFIRMED.**