**Donald Eugene LAMBERT, Petitioner,**

v.

**James BLODGETT, Respondent.**

**No. CS–00–0163–WFN.**

United States District Court,
E.D. Washington.

Jan. 17, 2003.

Patricia J Arthur, Columbia Legal Services, Seattle, WA, Nancy D Tenney, Federal Public Defenders, Seattle, WA, for Donald Eugene Lambert.

Paul Douglas Weisser, John Joseph Samson, Attorney General of Washington, Criminal Justice Division, Olympia, WA, for James Blodgett.

## JUDGMENT IN A CIVIL CASE

NIELSEN, District Judge.

This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Mr. Lambert's Amended 28 U.S.C. § 2254 Petition for Habeas Corpus is GRANTED. The Sixth Amendment claim of ineffective assistance of counsel based upon counsel's investigation and advice on the plea and the Fifth Amendment due process claim that the plea was not knowing and voluntary are sustained. The claims of ineffective assistance of counsel based upon counsel's stipulation to the decline of juvenile court jurisdiction and counsel's ethical conflict of interest are dismissed with prejudice.

A conditional writ of habeas corpus shall issue commanding the State of Washington, in the case of *State of Washington v. Donald Eugene Lambert,* Superior Court of Washington for Grant County, No. 97–1–00415–5, to release Mr. Lambert from custody, OR Vacate Mr. Lambert's judgment of conviction and sentence; vacate Mr. Lambert's plea of guilty to one count of aggravated first degree murder; reinstate Mr. Lambert's plea of not guilty to two counts of aggravated first degree murder; appoint counsel to represent Mr. Lambert (counsel may not be from the Grant County Public Defenders, THE DEFENDERS, the Earl & Earl, P.S., law firm, or be an attorney with a conflict of interest based upon the representation of a co-defendant); and schedule trial within ninety (90) days of Judge Wm. Fremming Nielsen's Order filed January 17, 2003.

All further criminal proceedings are subject to the Protective Order filed June 14, 2002 in the above-referenced case.

## ORDER

NIELSEN, District Judge.

Before the Court is Mr. Lambert's Amended 28 U.S.C. § 2254 Petition for Habeas Corpus, filed May 19, 2000 (Ct. Rec.3). Mr. Lambert is represented by Patricia J. Arthur of Columbia Legal Services and Nancy Tenney of the Federal Defenders of Western Washington.[1] Respondent James Blodgett is represented by Assistant Attorney Generals Paul Weisser and John Sampson.

The Court has reviewed the file, which includes the state court record[2], and all of

---

1. Ms. Tenney was previously with the Federal Defenders of Eastern Washington and Idaho.

2. State Court Record, filed August 15, 2000 (Ct.Rec.9) [Record] and Supplemental Submission filed September 25, 2000 (Ct.Rec.13).

the briefing on the Petition, and has considered the testimony and exhibits presented at the federal evidentiary hearing held June 11–12, 2002,[3] and the Petitioner's Supplemental Exhibit 29 and the transcript of Ron Thompson's deposition. By way of this Order, the Court enters its findings of fact[4] and conclusions of law and conditionally grants Mr. Lambert's 28 U.S.C. § 2254 Petition.

## I. PROCEDURAL BACKGROUND

On May 22, 1997, the Grant County Prosecutor charged Petitioner, Donald Lambert, in juvenile court with two counts of aggravated first degree murder for the shooting deaths of Homer and Vada Smithson. Mr. Lambert stipulated to the juvenile court's decline of jurisdiction and transfer of the case to adult court. Mr. Lambert initially pleaded not guilty but entered a guilty plea to one count of aggravated first degree murder soon after his trial began on December 10, 1997. He was sentenced that afternoon to life in prison without the possibility of parole. Mr. Lambert was represented by court-appointed attorney Guillermo Romero throughout the proceedings. His co-defendant, Alan Betancourt, was represented by court-appointed attorney Thomas Earl. Both Mr. Romero and Mr. Earl worked in the same office under the Grant County Public Defense Contract administered by the law firm of Earl & Earl under the name THE DEFENDERS.

On December 9, 1998, Mr. Lambert filed a personal restraint petition in the Washington Court of Appeals, Division III. Assisted by new counsel, Mr. Lambert alleged that Mr. Romero had provided ineffective assistance of counsel and that his guilty plea was not knowing, voluntary, and intelligent. The Court of Appeals granted Mr. Lambert's request to depose Mr. Romero. Mr. Lambert subsequently amended his personal restraint petition to add new claims alleging that Mr. Romero labored under a conflict of interest and also provided ineffective assistance of counsel in stipulating to the juvenile court's decline of jurisdiction. On November 17, 1999, the Court of Appeals dismissed all claims in Mr. Lambert's personal restraint petition. Mr. Lambert then sought discretionary review by the Supreme Court of Washington; on February 7, 2000, the supreme court entered an eight page Ruling Denying Review which denied Mr. Lambert's motion for discretionary review. Mr. Lambert filed a motion to modify the ruling, but the supreme court denied that motion on May 2, 2000.

Mr. Lambert filed an initial habeas Petition in the Western District of Washington on May 3, 2000. The matter was transferred to this district[5] and an Amended Petition filed May 19, 2000. Mr. Lambert alleges the following grounds for relief in this federal habeas action. First, Mr. Lambert alleges that Mr. Romero provided ineffective assistance of counsel (a) when he stipulated to the juvenile court's decline of jurisdiction and transfer of Mr. Lambert's case to adult court, (b) in conjunction with Mr. Lambert's guilty plea and the investigation preceding it, and (c) because Mr. Romero labored under an actual conflict of interest created by his relationship with the attorney representing Mr. Lambert's co-defendant. Second, Mr. Lambert alleges that his guilty plea was not knowing, voluntary, and intelligent.

---

**3.** Transcript of Evidentiary Hearing [TEH], filed July 5, 2002 (Ct. Recs. 110 and 111); Evidentiary Hearing Exhibit [EHE No.].

**4.** The Court's Findings of Fact appear in the Appendix to this Order.

**5.** *See* Rule 9.1, Local Rules, U.S. District Court, Eastern District of Washington.

This Court granted Mr. Lambert's request to conduct discovery. Order filed 6/01/01 (Ct.Rec.51). Subsequently the Court granted Mr. Lambert's request for an evidentiary hearing, finding that the state courts had failed to conduct a full and fair hearing to reasonably find the relevant facts and resolve inconsistencies. Order filed 11/05/01 (Ct.Rec.68). The evidentiary hearing commenced June 11, 2002 and concluded June 12, 2002. The Court heard testimony from nine witnesses for Mr. Lambert and one witness for Respondent James Blodgett and admitted numerous exhibits into evidence. *See* Order filed 6/14/02 (Ct.Rec.102). The Court had the opportunity to assess the credibility of the witnesses and to receive evidence, that resulted from discovery in this Court, that was not before the state court. After the evidentiary hearing, the Court allowed the parties to file post-hearing briefing and proposed findings of fact and conclusions of law. Subsequently, the Court granted Mr. Lambert's request to serve a single interrogatory to obtain the address of former Grant County Sheriff Detective Ronald Thompson (Order filed 7/18/02 (Ct.Rec. 115)) and to conduct a deposition of the same individual. Order filed 9/25/02 (Ct. Rec.142). By way of this Order the Court will also grant Petitioner's Motion to Supplement the Record with Petitioner's Exhibit 29 and the transcript of Ron Thompson's deposition.

## II. EXHAUSTION REQUIREMENT

■ A state prisoner must present to the state court each of his federal constitutional claims before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) and (c) (West 2002); *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Respondent asserts for the first time in the post-hearing Reply Brief filed September 16, 2002 (Ct.Rec.133, p. 2, n. 2), that Mr. Lambert has failed to exhaust the "enhanced tape recording issue" of his ineffective assistance of counsel claim and that the state has not waived the exhaustion requirement. The Court permitted Mr. Lambert to address this late-raised issue in supplemental briefing. Mr. Lambert argues that his ineffective assistance of counsel claim was exhausted and that the enhanced tape recording issue merely provides additional facts that support his claim.

■ The exhaustion requirement is based upon comity concerns to allow the state courts the first opportunity to correct constitutional error. *Weaver v. Thompson,* 197 F.3d 359, 364 (9th Cir. 1999). To exhaust a claim the petitioner must present both the factual and legal basis of the issue to the state court. *Weaver,* 197 F.3d at 364. Here it is undisputed that Mr. Lambert identified two legal issues in the state courts, which he has also raised in this Petition—that his rights to due process and effective assistance of counsel were violated. At the state court he presented facts in support of the contentions that his plea was not knowing and voluntary and that Mr. Romero was ineffective in stipulating to the declination of juvenile court jurisdiction and in his preparation for the hearing, in providing advice on the plea, and because he had a conflict of interest. It is also undisputed that the fact of the enhanced tape recording was not presented to the state court. The state court had denied Mr. Lambert an evidentiary hearing pursuant to Rule 16.12 of the Washington Rules of Appellate Procedure. The facts of the enhanced recording and transcription error were not discovered until this Court granted Mr. Lambert discovery of the Grant County Sheriff's files. *See* Order filed 6/01/01 (Ct.Rec.51).

■ A habeas petitioner need not present every piece of evidence to the state court in support of his federal claims

to satisfy the exhaustion requirement. *Chacon v. Wood,* 36 F.3d 1459, 1469 (9th Cir.1994). The presentation of additional facts to a district court on habeas review is permissible provided the evidence does not "fundamentally alter the legal claim already considered by the state courts" or "attempt[ ] to expedite federal review by deliberately withholding essential facts from the state court." *Vasquez v. Hillery,* 474 U.S. 254, 257–60, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (supplementation and clarification of the state court factual record does not change a claim so drastically as to require that the state courts be given a new opportunity to hear the issues). *See also Luna v. Cambra,* 306 F.3d 954, 965 (9th Cir.) ("on habeas review, we have previously considered additional evidence that does not alter the gravamen of the petitioner's claim"), *as amended* 311 F.3d 928 (9th Cir.2002); *Correll v. Stewart,* 137 F.3d 1404, 1414 n. 2 (9th Cir.1998) (" 'claim exhaustion' does not equate to 'evidence exhaustion' "). Here there is no evidence that Mr. Lambert knew of the enhanced tape issue prior to filing his federal habeas petition and deliberately withheld it from the state courts. The determinative question is whether the enhanced tape issue fundamentally alters the ineffective assistance of counsel claim that was presented to the state courts. This Court concludes that it does not.

In *Vasquez,* the federal court ordered expansion of the record pursuant to 28 U.S.C. § 2254, Rule 7, to address the equal protection claim that blacks were systematically excluded from the grand jury. The court requested more figures and statistical probability analysis. The state argued that the petitioner had failed to exhaust state remedies related to the new evidence. *Vasquez,* 474 U.S. at 257, 106 S.Ct. 617. The Supreme Court reviewed the new evidence and determined that it supplemented the record but did not fundamentally alter the claim. *Id.* at 258–60,

106 S.Ct. 617. Thus, the valid exercise of the court's power to expand the record to include new evidence did not result in an unexhausted claim.

Acting in a way similar to the district court in *Vasquez,* this Court granted Mr. Lambert's request to conduct additional discovery pursuant to 28 U.S.C. § 2254, Rule 6 and his request for an evidentiary hearing pursuant to Rule 8 on his ineffective assistance of counsel claim. The new evidence regarding the enhanced tape recording and transcription error that was developed should not result in a finding of a failure to exhaust here anymore than it did in *Vasquez.* The Rules Governing § 2254 Proceedings clearly contemplate that the federal court may enlarge the scope of the evidence before it by expanding the record or granting discovery and an evidentiary hearing. The implicit result is that facts in support of claims may change after hearings in district court. See *Weaver,* 197 F.3d at 364.

Mr. Lambert identified numerous facts in state court in support of alleged deficiencies in Mr. Romero's representation. His inability to fully explore the tape recorded confession resulted from the state court's refusal to grant him an evidentiary hearing and not from any lack of diligence on his part. "[C]omity is not served by saying a prisoner' has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort." *Michael Williams v. Taylor,* 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). The legal basis for the claim of ineffective assistance of counsel remained the same. The additional facts do not alter the gravamen of the claim nor place it in a significantly different posture. *Luna,* 306 F.3d at 965. The new evidence merely provides another example of an omission on Mr. Romero's part. The Court concludes that because the claim was not altered by the new evi-

dence, and given the state court's refusal to grant an evidentiary hearing, Mr. Lambert "fairly presented" the substance of his ineffective assistance of counsel claim to the state court and exhausted the claim. See *Weaver*, 197 F.3d at 365. Accordingly, the Court may consider the evidence of the enhanced tape recording and transcription error.

Even if the claim were unexhausted due to the new evidence, and this was a mixed petition, this Court would not dismiss the Petition without prejudice pending exhaustion of the claim. Arguably, Mr. Lambert could raise the new evidence in a collateral attack in state court pursuant to Washington Rev.Code 10.73.100 (newly discovered evidence exception to the one year limit on filing collateral attacks in state court).

However, when the state fails to assert the failure to exhaust

> defect until after significant proceedings have occurred in the district court, dismissal of the petition by the district court ... is not automatically required. Rather, the district court ... must "exercise discretion ... to decide whether the administration of justice would be better served by insisting on [complete] exhaustion or by reaching the merits of [at least some of the claims in] the petition forthwith."
> Finally, in *Strickland v. Washington*, the Supreme Court held that the total exhaustion principle of *Rose* is not jurisdictional. ... [I]n situations in which "judicial efficiency" or other federal interests substantially outweigh the state's interest in reviewing all the prisoner's claims before federal review begins, a limited discretion to adjudicating mixed petitions exists.

**6.** If the claim was unexhausted but the Court considered the resulting mixed Petition for the reasons stated, it is questionable if the Court could consider the new evidence. Even if the Court did not consider the new evidence

2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 23.5, pp. 999–00 (4th ed.2001) *quoting Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

Here, Respondent failed to raise the critically important issue of exhaustion until more than one year after the enhanced tape issue was fully identified by Mr. Lambert in briefing filed August 22, 2001 (Ct. Rec.60). Respondent raised the issue only in his final reply briefing three months after the two day federal evidentiary hearing. On habeas review the federal evidentiary hearing is the "main event." *Granberry*, 481 U.S. 129, 132, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). Respondent raised the issue of exhaustion well after this Court and the parties expended significant resources on the hearing. Moreover, Respondent devotes only 6 lines in a footnote to the issue, citing no case law in support of the failure to exhaust argument and providing no analysis.

The exhaustion requirement is not intended to be "rigid and inflexible," *see Granberry*, 481 U.S. at 136, 107 S.Ct. 1671, or "lead petitioners into a federal habeas cul-de-sac." *Correll*, 137 F.3d at 1414. If the enhanced tape recording issue was unexhausted, the Court concludes that under the circumstances of this case the concerns for judicial efficiency and the administration of justice would be best served by this Court proceedings to adjudicate the mixed petition.[6]

## III. STANDARD OF REVIEW

The habeas statute provides the applicable standard of review for this Court on the Petition:

> on the ineffective assistance of counsel claim, the Court would reach the same result. The new evidence merely supplements already sufficient evidence to show that Mr. Lambert received ineffective assistance of counsel.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted on a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2) (West 2002).

██ The statute establishes a highly deferential standard for reviewing state court rulings, requiring that the state court decisions be given the benefit of the doubt. *Woodford v. Visciotti,* 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam). "A state court's decision can be 'contrary to' federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts 'materially indistinguishable' from those in a controlling case, but nonetheless reaches a different result." *Andrade v. Attorney General of State of California,* 270 F.3d 743, 753 (9th Cir.2001), *cert. granted,* 535 U.S. 969, 122 S.Ct. 1434, 152 L.Ed.2d 379 (2002).

██ "A state court's decision can involve an 'unreasonable application' of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Id.; see also Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (J. O'Connor, concurring). A reviewing court must dis-

tinguish between an unreasonable application of federal law which will satisfy the standard of 28 U.S.C. § 2254(d)(1) and merely an incorrect application of federal law which will not. *Woodford,* 537 U.S. at ——, 123 S.Ct. at 360. The Ninth Circuit has stated that

[w]e will find an 'unreasonable application' only when our independent review of the legal question 'leaves us with a firm conviction that one answer, the one rejected by the [state] court was correct and the other, the application of the federal law that the [state] court adopted was erroneous'—in other words, that clear error occurred.

*Andrade,* 270 F.3d at 753, *quoting Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000).

██ Clearly established federal law refers to Supreme Court holdings (as opposed to dicta) as of the time of the relevant state court decision. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495 (J. O'Connor, concurring). The Supreme Court need not have addressed the identical factual issue, but it must have clearly determined the law. *Houston v. Roe,* 177 F.3d 901, 906 (9th Cir.1999). Ninth Circuit law may assist a court in determining what Supreme Court law is clearly established. *Van Tran,* 212 F.3d at 1154.

██ A court may also grant a habeas petition as noted in the statute if the state court decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). To do so, the Court must find that the state's factual findings were clearly erroneous, in effect, that the state court was wrong and the petitioner is correct. *Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir.2002).

██ The habeas statute also provides

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1) (West 2002). If adjudication on the merits in state court is not possible however, then deference is not owed to the state's factual determinations. *Killian v. Poole,* 282 F.3d 1204, 1208 (9th Cir.2002). Adjudication on the merits is not possible when the state court denies an evidentiary hearing to develop facts on the claim. *Id.* In *Killian,* the only evidence on a petitioner's perjury claim was presented at the federal evidentiary hearing. The Ninth Circuit held that normal deference would not be owed to factual determinations of the state court related to the perjury claim. *Id.*

▪ In this case, some evidence on the ineffective assistance of counsel claim was produced only at the federal evidentiary hearing because the state denied Mr. Lambert full discovery and an evidentiary hearing. An example of such evidence is the enhanced tape recording of Mr. Lambert's statement to the police and the transcription error. Deference should not be accorded to state court findings of fact related to this issue. *Killian,* 282 F.3d at 1208.

The state appeals court did however, allow Mr. Lambert to depose Mr. Romero, although the deposition may not have been fully effective for fact development on the ineffective assistance of counsel claim. As the state supreme court noted in its Ruling Denying Review, Mr. Lambert's counsel dissuaded Mr. Romero from answering several questions by asserting attorney-client privilege. Record, Exh. 30, p. 3; Record, Exh. 15, p. 121–152. The state

supreme court observed that inquiry into attorney-client communication may be critical to the proper assessment of ineffective assistance of counsel claims and that Mr. Lambert waived attorney-client privilege to the extent necessary to enable counsel to respond to the allegations. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Neither the appeals court that reviewed Mr. Romero's deposition, nor the supreme court that noted the deficiency in the deposition, ordered an expansion of the record to more fully explore the ineffective assistance of counsel claim. By proceeding to rule on evidence that was noted as incomplete the state court effectively denied Mr. Lambert the last opportunity within the state courts to develop all of the facts in support of his ineffective assistance of counsel claim. The state court's factual findings on the incomplete evidence should not receive deference.

As discussed *infra,* there are several state court factual determinations that are unreasonable. It is unlikely the presumption of correctness would apply for the reasons just stated, but even if the presumption applied, Mr. Lambert has rebutted the factual determinations with clear and convincing evidence.

In a federal habeas case this Court looks to the state's last reasoned decision. *Avila,* 297 F.3d at 918. Here that is the Washington State Supreme Court's Ruling Denying Review. Record, Exh. 30.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Lambert asserts that Mr. Romero provided ineffective assistance of counsel. The Sixth Amendment provides that an accused in a criminal prosecution has a right to the assistance of counsel. U.S. CONST. amend. VI. When a defendant is denied effective assistance of counsel the

confidence in the fundamental fairness of the state adjudication is undermined and issuance of a federal writ is certainly justified. *Williams,* 529 U.S. at 375, 120 S.Ct. 1495. In considering a claim of ineffective assistance of counsel, the Court must consider whether counsel's representation fell below an objective standard of reasonableness and whether the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *The Strickland* standard is clearly established federal law, *Williams,* 529 U.S. at 390, 120 S.Ct. 1495, and there is no dispute that it was clearly established at the time Mr. Lambert's state court conviction became final. *Strickland* provides:

> [t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

The first prong of the *Strickland* test requires that Petitioner show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. 2052. The Court's scrutiny of counsel's performance must be highly deferential and must attempt to evaluate the conduct from counsel's perspective at the time. *Id.* at 689, 104 S.Ct. 2052.

> "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id.* quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). A mere difference of opinion over whether another lawyer might have approached a case differently in terms of strategy is insufficient to establish ineffective assistance of counsel. *United States v. Ferreira–Alameda,* 815 F.2d 1251, 1254 (9th Cir.1986). The second prong of the *Strickland* test provides "the defendant must show that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ ***Stipulation to Juvenile Court's Declination of Jurisdiction.*** Mr. Lambert asserts that Mr. Romero provided ineffective assistance of counsel when he stipulated to the juvenile court's decline of jurisdiction and transfer of Mr. Lambert's case to adult court. Respondent asserts that Mr. Lambert may not raise this ground as an independent constitutional violation as it occurred prior to the entry of his guilty plea. *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Ortberg v. Moody,* 961 F.2d 135, 137–38 (9th Cir.1992); *Rodriguez v. Ricketts,* 798 F.2d 1250, 1252 (9th Cir. 1986) ("a guilty plea in adult court waives defects in a juvenile fitness hearing"). Once a defendant has pleaded guilty, he may only attack the voluntary and intelligent nature of his plea. *Tollett,* 411 U.S. at 267, 93 S.Ct. 1602.

The state court addressed Mr. Romero's decision to stipulate to the decline of juvenile court jurisdiction. Record, Exh. 30, pp. 6–7. The state court did not find that Mr. Lambert was foreclosed from raising this as an independent constitutional violation. Instead, the state court addressed the merits of the ineffective assistance of counsel claim. The state court did not analyze whether this was objectively unreasonable conduct but found that Mr. Lambert was not prejudiced and had

therefore failed to prove the second prong of the *Strickland* standard. The court accurately noted that the *Kent* factors favored declination so the outcome of the declination hearing would not have changed. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

Although the state court erroneously considered the claim, it denied it nonetheless so its ruling does not violate clearly established Supreme Court law. This Court made factual findings on the claim (see Appendix to this Order), but the Court concludes that Mr. Lambert may not raise this claim and it is **dismissed with prejudice**. *Tollett*, 411 U.S. at 267, 93 S.Ct. 1602.

 *Investigation and Guilty Plea*. Mr. Lambert asserts that Mr. Romero provided ineffective assistance of counsel in conjunction with his guilty plea and the investigation preceding it. A guilty plea is a "grave and solemn act" that results in the waiver of a constitutional right to trial. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Once a defendant has entered a guilty plea upon the advice of counsel he can only attack its voluntary and intelligent nature by showing he received ineffective assistance of counsel. *Id.* at 56–57, 106 S.Ct. 366; *United States v. Broce*, 488 U.S. 563, 574, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) ("A failure of counsel to provide advice [on a guilty plea] may form the basis of a claim of ineffective assistance of counsel.").

 A. *Counsel's Performance*. Trial counsel has an obligation to conduct a reasonable investigation which will allow counsel to make informed decisions about how best to represent his client. *Strick-*

*land*, 466 U.S. at 691, 104 S.Ct. 2052. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* The Supreme Court has also held that trial counsel has a duty to conduct a thorough investigation of the defendant's background. *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Whether to plead guilty is often a decision that is significantly influenced by a defendant's assessment of the strength of the prosecution's case against him and by the apparent likelihood of obtaining a more lenient sentence if a plea is offered and accepted. *Brady*, 397 U.S. at 756, 90 S.Ct. 1463.

 The state court did not comment on Mr. Romero's duty to investigate imposed by *Strickland*, thus there are no findings by the state court to which deference must be given. Record, Exh. 30, pp. 7–8. Based upon facts found by this Court (see Appendix to this Order and 2254 Supplemental Order—Under Seal—Subject to Protective Order), and supported by the testimony of Mr. Lambert's expert witness, Michael Iaria, Mr. Romero's conduct fell below the objective standard of reasonableness because he failed to: (1) hire an investigator and/or investigate Mr. Lambert's background, including his alcohol exposure in utero, and the background of his co-defendants, who were to testify against him, for impeachment material; (2) review discovery to learn of the enhanced tape recording of Mr. Lambert's taped statement; and (3) compare the tape recording to the transcript and discover the significant transcription error attributing a false admission of premeditation to Mr. Lambert. In the absence of a reasonable investigation, Mr. Romero could not accurately assess the strength of the state's case to assist Mr. Lambert in weighing the

alternative course of action open to him. *Hill,* 474 U.S. at 56, 106 S.Ct. 366. Mr. Romero did not offer an explanation of why this investigation was unnecessary. *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

 Counsel also has a duty following his "independent examination of the facts, circumstances, pleadings and laws ... to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948). The decision to enter a guilty plea is the defendant's. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). By pleading guilty, however, the defendant is waiving the important constitutional right to trial, so "counsel must ensure that the client's decision is as informed as possible." *Miller v. Straub,* 299 F.3d 570, 580–81 (6th Cir.2002) pet. for cert. filed 11/26/02. In discussing the right to counsel, the Supreme Court has observed that every person, even someone of intelligence, "requires the guiding hand of counsel at every step in the proceedings against him." *Powell v. State of Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932). It is obvious that the need is even more critical when the defendant is young, as Mr. Lambert was, without significant education and with possible medical problems. *See Miller,* 299 F.3d at 570 (young age—15 and 16 years, and reliance on counsel increased counsels' duty to make certain defendants knew of all the risks associated with a guilty plea and waiver of right to trial).

The state court did not comment on Mr. Romero's failure to offer the required advice to Mr. Lambert on whether Mr. Lambert should plead guilty. *Von Moltke,* 332 U.S. at 721, 68 S.Ct. 316 ("an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). The

state court observed that it could find no basis in the record to support Mr. Romero's assertion in his deposition authorized by the state court, that Mr. Lambert might have been acquitted of Mr. Smithson's murder and convicted of something less than aggravated murder for Mrs. Smithson's murder. However, Mr. Romero was obligated to share his assessment with Mr. Lambert which he failed to do. *McMann v. Richardson,* 397 U.S. 759, 769–70, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (defense counsel must make best judgment as to the weight of the state's case and share his predictions with the defendant even though the predictions are necessarily uncertain). The assessment was likely based in part on Mr. Lambert's statement to the police that he fired only one shot at Mr. Smithson, while Mr. Betancourt fired many. EHE No. 32:16–18. This evidence would have weighed in favor of an acquittal on Mr. Smithson's murder. To fail to make any recommendation is not a trial tactic or strategy but a dereliction of duty. It is conduct that this Court concludes is below the objective standard of reasonableness. *Von Moltke,* 332 U.S. at 721, 68 S.Ct. 316.

The state court identified the standards of *Strickland* and *Hill* and then found that a reasonably competent attorney could conclude that Mr. Lambert had nothing to lose by pleading guilty. This is an unreasonable application of the law of *Strickland* and *Hill.* When counsel does not perform a reasonable investigation or explain why it was unnecessary and fails to offer an informed opinion on the plea, counsel is not acting as the counsel guaranteed by the Sixth Amendment. To the extent the state court found that Mr. Lambert had nothing to lose by entering the plea, the finding is clearly erroneous and Mr. Lambert has rebutted the finding by clear and convincing evidence. Mr. Lambert had everything to lose by entering the

guilty plea which gave him no sentencing benefit. Mr. Lambert received the same sentence after his guilty plea, life without the possibility of parole, as he would have if he had gone to trial and been convicted of both counts of aggravated first degree murder. Two life sentences without the possibility of parole are quantitatively and qualitatively no different than one such sentence. Mr. Lambert's only chance to reduce his sentence to something less than life without parole was to go to trial. Even the state court admitted the plea was not advantageous but determined that avoiding being labeled as a "double murderer" and not sitting though trial were reasons that supported the plea. The minuscule benefits the state court identified are not objectively significant enough to support a plea that results in a person receiving the worst possible penalty outcome. When a defendant enters a plea that offers no benefits and counsel fails to inform the defendant of that fact, courts will usually find that counsel's performance was below the required level of competence. *See United States v. Loughery,* 908 F.2d 1014, 1019 (D.C.Cir.1990). Mr. Lambert's plea offered no benefit but assured that he would receive the most severe penalty available. This Court concludes that Mr. Romero's investigation and advice on the plea fell significantly below the objective standard of reasonableness and the state court unreasonably applied clearly established Supreme Court authority (*Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948)) when it concluded to the contrary.

**B.** *Prejudice.* The second prong of the *Strickland* test provides "the defendant must show that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. In the context of the guilty plea, to satisfy prong two of the *Strickland* standard and show prejudice, Mr. Lambert must show that but for Mr. Romero's errors, he would not have

pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

 A defendant has a right to know the consequences of pleading guilty. *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *Brady,* 397 U.S. at 748, 90 S.Ct. 1463. The state court determined that Mr. Lambert's contention that he thought he was shortening his sentence by pleading guilty was not supported by the record and that he in fact did understand the meaning of his sentence of life without the possibility of parole. Record, Exh. No. 30, p. 8. Both factual findings are clearly erroneous and Mr. Lambert has rebutted the findings by clear and convincing evidence.

**1. Prejudice Resulting from Failure to Properly Advise as to Guilty Plea.** In early November 1997 Mr. Lambert's confusion about the sentence he faced was obvious. On the one hand he told Western State Hospital personnel that the jury might not recommend the death penalty because of his age when in fact he was not even eligible for the death penalty. *State v. Furman,* 122 Wash.2d 440, 456, 858 P.2d 1092 (1993) (statutes may not be construed to authorize death penalty for juveniles). On the other hand he told the Western State personnel that he should probably just go to prison and work on being a better person for when he got out. Clearly this latter scenario is inconsistent with a sentence of life without the possibility of parole.

At the time of the plea Mr. Lambert's confusion remained. His note to counsel at the beginning of the trial on December 10, 1997, regarding his desire to plead guilty, and his testimony before this Court indicated that he thought a sentence of life without the possibility of parole was equivalent to 20 years "like in movies." THE

359:20—340:11. Mr. Lambert's testimony was self-serving but the testimony is not contradicted by other credible evidence in the record and is accepted by this Court. Although the juvenile later told the state trial court in a very brief exchange at the entry of the plea that he understood the meaning of the sentence—it is clear he did not. Although the state court found that the penalty is not confusing or unclear—the state court failed to consider and apply authority establishing that the true meaning of life sentences is commonly misunderstood. *Simmons v. South Carolina,* 512 U.S. 154, 169–70, 114 S.Ct. 2187, 129 L.Ed.2d 133(1994) (due to the historic availability of parole it has been commonly understood that the actual term is shorter than the stated term of imprisonment).

Mr. Lambert faced penalties of life without the possibility of parole on the two counts of aggravated first degree murder. WASH. REV. CODE ANN. § 9A.32.030 (West 2000) and WASH. REV. CODE ANN. §§ 10.95.020 and 10.95.030 (West 2002). If he had been convicted of non-aggravated first degree murder he faced a sentence of life with the possibility of parole. WASH. REV. CODE ANN. § 9A.32.040 (West 2000). The decision to plead guilty to one count of aggravated first degree murder was the most important decision of his life, and he was forced to make it without essential information. *See Miller v. Straub,* 299 F.3d 570, 582 (6th Cir.2002) (A 15 and 16 year old pleaded guilty to first degree murder on advice of counsel to obtain the benefit of being sentenced as juveniles. The judge advised them at the plea that if he chose to sentence them as adults the sentence would be life without parole. Counsel neglected to tell the defendants that the prosecutor could appeal a juvenile sentence—which occurred and resulted in both boys being sentenced as adults to life without parole. The Sixth Circuit granted the habeas writs finding that the boys received ineffective assistance of counsel.),

*petition for cert. filed* 11/26/02. Not only did Mr. Lambert not have important information about the choices he faced but his final decision was made in haste, after a mere 13 minute discussion with Mr. Romero in the presence of a court officer.

If Mr. Lambert had merely received wrong calculations or inaccurate predictions about the number of years of his sentence, that alone would not constitute ineffective assistance of counsel. *See McMann v. Richardson,* 397 U.S. 759, 772, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Iaea v. Sunn,* 800 F.2d 861, 865 (9th Cir.1986). Instead, Mr. Lambert did not receive information about the basic meaning of the penalty he faced and the penalty that was imposed. Mr. Romero did not distinguish between a conviction on two counts of aggravated murder and one count of aggravated murder. Mr. Romero did not inquire or correct Mr. Lambert's erroneous belief that his sentence would be equivalent to 20 years. The difference between a sentence of life without the possibility of parole and 20 years is a gross difference. *See Iaea,* 800 F.2d at 863–865 (counsel's performance was deficient and represented a gross mis-characterization when counsel advised defendant he had almost no chance of receiving a life sentence and might get probation when in fact he was sentenced to life sentences on class A felonies).

The state court determined that Mr. Lambert's bare allegation that he would go to trial was insufficient, as he did not offer a credible explanation of why he would do so. The conclusion is not a reasonable application of clearly established Supreme Court authority that required Mr. Lambert show that it is reasonably probable that but for Mr. Romero's unprofessional errors he would have not pleaded guilty but would have gone to trial. *Hill,* 474 U.S. at 59, 106 S.Ct. 366; *Strickland,* 466 U.S. at 668, 104 S.Ct. 2052 (this standard

is less that the preponderance of the evidence). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The test for whether a defendant would have chosen to go to trial is an objective one. *Sanchez v. United States,* 50 F.3d 1448, 1454 (9th Cir.1995).

Mr. Lambert testified that he would not have pleaded guilty if he knew: (1) he had a chance to be convicted of a lesser charge; (2) he could challenge the false transcription regarding premeditation; (3) he would get the same sentence by pleading guilty to one count of aggravated first degree murder as if convicted of both counts at trial; and (4) his plea would result in spending the rest of his life in prison. His testimony is self-serving, but it is not contradicted by other credible evidence in the record. It is accepted by this Court. It would be reasonably probable that a defendant in Mr. Lambert's position would not have pleaded guilty to one count of aggravated first degree murder which gave him absolutely no sentencing benefit. Instead it would be reasonably probable he would have proceeded to trial as he had nothing to lose and everything to gain. Thus, prejudice resulted from Mr. Romero's failure to offer advice on the plea that adequately informed Mr. Lambert of the consequences.

**2. Prejudice Resulting from Failure to Investigate.** On the prejudice prong of the *Strickland* analysis, when the error of counsel is a failure to investigate, the court must evaluate whether counsel would have changed his recommendation as to the plea if he had known the results of an investigation. *Hill,* 474 U.S. at 59, 106 S.Ct. 366. Mr. Romero's lack of diligence related to investigation of this case was egregious. He admits that had he known of the enhanced tape recording and the transcription error he would have proceeded differently. Had he fully evaluated the strength of the state's case it is reasonably probable that he would have changed his recommendation as to the plea, from no recommendation and letting this youth make the decision by himself, to attempts to dissuade him from pleading guilty. Thus, prejudice resulted from Mr. Romero's failure to investigate.

A court that is hearing an ineffective assistance of counsel claim must consider the totality of the evidence, *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052, and the cumulative prejudicial effect of errors. *See Phillips v. Woodford,* 267 F.3d 966, 985 (9th Cir.2001); *Mak v. Blodgett,* 970 F.2d 614, 622 (9th Cir.1992) (*per curiam*). The state court's determination on the ineffective assistance of counsel claim was "contrary to" clearly established federal law in that the court failed to consider and apply the Supreme Court authority that required the court to evaluate all of Mr. Romero's alleged deficiencies and the cumulative effects of the errors on Mr. Lambert's case. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. In discussing the prejudice requirement the Supreme Court in *Strickland* observed that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Mr. Romero's unprofessional omissions in this case were neither sound nor brilliant. His cumulative failures to investigate, offer advice on the plea, and attempt to dissuade Mr. Lambert from entering a plea that gave him no benefit, were well below the objective standard of reasonableness. Moreover, Mr. Romero's deficient performance prejudiced Mr. Lambert, because it was reasonably probable that but for Mr. Romero's errors Mr. Lambert would not have pleaded guilty but instead would have proceeded to trial.

This Court is firmly convinced that the state court unreasonably determined the facts and unreasonably applied Supreme Court authority to Mr. Lambert's ineffective assistance of counsel claim. This Court is also firmly convinced that the state court's ultimate determination that Mr. Lambert received constitutionally adequate representation was unreasonable and represented clear error. *Andrade*, 270 F.3d at 753. Mr. Lambert unquestionably received ineffective assistance of counsel, which undermines confidence in the fundamental fairness of the state adjudication. *Williams*, 529 U.S. at 375, 120 S.Ct. 1495.

**** *Conflict of Interest.* Mr. Lambert asserts that Mr. Romero labored under an actual conflict of interest created by his relationship with the attorney representing Mr. Lambert's co-defendant, Adam Betancourt. A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an attorney with undivided loyalty. *See Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Holloway v. Arkansas*, 435 U.S. 475, 489–90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In order to show a Sixth Amendment violation based on an alleged conflict, a habeas petitioner must show that an actual conflict of interest adversely affected the attorney's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Bragg v. Galaza*, 242 F.3d 1082, 1086 (9th Cir.) *amended by* 253 F.3d 1150 (9th Cir.2001). The petitioner must show more than the mere possibility of a conflict. *Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708. To show an actual conflict, the petitioner must show that counsel actively represented conflicting interests. *Bragg*, 242 F.3d at 1087. The "adverse effect" standard can be met by showing that the conflict likely had some effect on the way counsel handled particular aspects of the case. *Lockhart v. Terhune*, 250 F.3d 1223,

1231 (9th Cir.2001); *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992). If a petitioner can show that counsel labored under an actual conflict of interest which adversely affected the attorney's performance, the petitioner need not show prejudice as normally required by the second prong of *Strickland* as prejudice is presumed. *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. 1708; *Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).

**** Even joint representation of co-defendants by a single attorney does not necessarily constitute a per se conflict of interest. *Holloway v. Arkansas*, 435 U.S. 475, 482–83, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). If a conflict prevents counsel from pursuing certain outcomes during pretrial plea negotiations, however, an adverse effect results. *Lockhart*, 250 F.3d at 1231. Several courts have found that when an attorney representing two criminal defendants negotiates an agreement for one that requires testimony against the other, an actual conflict did exist that adversely affected representation. *See Burden v. Zant*, 24 F.3d 1298, 1305 (11th Cir.1994); *Ruffin v. Kemp*, 767 F.2d 748, 752 (11th Cir.1985).

In this case Mr. Romero did not represent both co-defendants, but both co-defendants were represented by attorneys from THE DEFENDERS. In such a situation, an imputed disqualification may apply. The Washington Rules of Professional Conduct describe imputed disqualification and dictate that "while lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by [other rules]." WASH. RULES OF PROF'L CONDUCT R. 1.10(a) (West 2002). The American Bar Association's [ABA's] Model Rules of Professional Conduct provide guidance on what constitutes a firm

for purposes of determining whether an imputed conflict of interest exists.

(1) For purposes of the Rules of Professional Conduct, the term "firm" denotes lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal service organization or the legal department of a corporation or other organization. See Rule 1.0(c). Whether two or more lawyers constitute a firm within this definition can depend on the specific facts. See Rule 1.0, Comments [2]—[4].

MODEL RULES OF PROF'L CONDUCT R. 1.10, cmt. 1.

The Rules also provide that:

[T]wo practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for the purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they serve.

MODEL RULES OF PROF'L CONDUCT R. 1.0. cmt. 2.

The Supreme Court has never applied the ethical imputed disqualification rule in Sixth Amendment analysis, but has only "assum[ed] without deciding that two law partners are considered as one attorney ...." *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *see also Burden v. Zant,* 24 F.3d 1298, 1302 n. 7 (11th Cir.1994) (court assumed arguendo that two attorneys in same public defender's office may be considered as one attorney). Mr. Lambert's expert witness, David Boerner, agreed that the Supreme Court has never been presented with the issue of imputed disqualification. TEH 148:21—149:1. Because the Supreme Court did not reach the issue regarding imputed disqualification, the Court's assumption in *Berger* is not a holding and does not therefore constitute clearly established federal law for purposes of 28 U.S.C. § 2254(d)(1). *Williams,* 529 U.S. at 365, 120 S.Ct. 1495 (clearly established law refers to Supreme Court holdings, not dicta).

The Court's findings related to the conflict of interest claim are memorialized in the Appendix to the Order. Although the Supreme Court has not held that the ethical imputed disqualification rule should be applied in Sixth Amendment analysis, it has so assumed. *Burger,* 483 U.S. at 783, 107 S.Ct. 3114. If the imputed disqualification rule could be applied in this case there were sufficient indicia of the existence of a "firm" to determine that THE DEFENDERS was a firm for imputed disqualification purposes. Then it would be clear that an actual conflict did exist that adversely affected Mr. Lambert's representation because an associate of THE DEFENDERS negotiated a plea agreement for Adam Betancourt that required testimony against Donald Lambert. *See Burden v. Zant,* 24 F.3d 1298, 1305 (11th Cir.1994).

The Court notes that there is a high potential for conflicts of interest to occur in an arrangement like the one that existed in Grant County with THE DEFENDERS. Divided loyalty could occur due to representation by associates of THE DEFENDERS of co-defendants and also as between the interests of the attorney's client and the attorney's personal interest to retain his contract with THE DEFENDERS. It is also extremely difficult for a criminal defendant in such a situation to obtain evidence that the attorney actually represented adverse interests. THE

DEFENDERS' arrangement with its potential conflicts of interest does not engender confidence in the indigent defense system and reflects poorly on the criminal justice system as a whole.

The state court's determination that Mr. Romero and Thomas Earl did not discuss the Smithson [7] murder case was an unreasonable determination of the facts and is clearly erroneous based upon the evidence presented at the evidentiary hearing in which both Mr. Romero and Thomas Earl admitted talking to each other regarding the Smithson case. Mr. Lambert has rebutted this finding by clear and convincing evidence. *See* state court Ruling Denying Review, Record, Exh. 30, pp. 3–6.

The state court's determinations that Mr. Romero and Thomas Earl did not share confidences regarding the case and did not view each others files regarding the case were reasonable determinations based upon the evidence presented. The Supreme Court's determination that Mr. Romero and Thomas Earl were independent contractors to Earl & Earl, P.S., is a reasonable but limited determination based upon the facts. It stops short of a complete analysis of the relationship between the attorneys who represented Lambert's and Betancourt's adverse interests. While both attorneys maintained independent professional identities for a part of their practice, they were also associated in THE DEFENDERS as subcontractors to Earl & Earl, P.S. In the latter relationship their independent professional identities were lost. They did not represent their clients as sole practitioners, but rather as public defenders from THE DEFENDERS.

The state court determination that assignment of the cases to THE DEFENDERS did not impair Mr. Romero's performance was a reasonable determination on the facts in that there was no direct evidence that Mr. Romero actively represented conflicting interests. However, it would be an unreasonable determination of the facts under the ethical imputed disqualification rule in that Mr. Romero and Thomas Earl's respective representation of co-defendants Donald Lambert and Adam Betancourt, which resulted in a plea for Adam Betancourt conditioned on his testimony against Donald Lambert, would adversely affect Donald Lambert's representation. As the Supreme Court has not applied the ethical imputed disqualification rule to Sixth Amendment analysis, this ground, raised by Mr. Lambert, does not establish that he received ineffective assistance of counsel due to the ethical conflict of interest and the claim must be **dismissed with prejudice**.

In conclusion, this Court is most firmly convinced that Mr. Lambert received ineffective assistance of counsel based upon Mr. Romero's investigation and advice on plea. The claims of ineffective assistance of counsel due to the stipulation to decline of juvenile court jurisdiction and conflict of interest must be dismissed with prejudice.

## V. GUILTY PLEA—KNOWING AND VOLUNTARY

 Mr. Lambert alleges that his guilty plea was not knowing, voluntary and intelligent. A guilty plea is void as a violation of the due process clause of the Fifth Amendment unless the plea is voluntary and knowing. *Boykin v. Alabama,* 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A defendant must possess "an understanding of the law in relation to the facts," *id.,* and be "fully aware of the direct consequences [of his

---

**7.** The Supreme Court Ruling Denying Review states that the two attorneys did not discuss the "Simonson" murder case. The Court presumes this to be a scrivener's error. The Ruling Denying Review consistently referred to the Smithsons as the Simonsons.

plea], including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . ." *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A knowing plea can only occur if the defendant receives reasonably competent advice, i.e., effective assistance from competent counsel. *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The defendant must be adequately advised of the alternative courses of action open to him. *See North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). It is beyond dispute that the above represents clearly established federal law, as determined by the Supreme Court.

As discussed *supra*, Mr. Lambert did not understand the law in relation to the facts. He did not know his sentence would be the same by pleading guilty to one count of aggravated first degree murder as if he went to trial and was convicted of two counts of aggravated first degree murder. Mr. Lambert was not fully aware of the direct consequences of his plea because he thought his sentence would be equivalent to 20 years. He was not aware that the prosecutor's dismissal of one aggravated first degree murder count had absolutely no value to him. As previously determined, Mr. Romero did not provide reasonably competent advice regarding the plea decision. He did not advise Mr. Lambert adequately regarding the strength of the state's case because he had failed to investigate and review discovery. He did not adequately advise Mr. Lambert of the consequences of the plea or the alternative courses of action open to Mr. Lambert.

Based upon the findings memorialized in the Appendix to this Order, the Court concludes that Mr. Lambert's guilty plea to one count of aggravated first degree murder was not knowing, voluntary, and intelligent and was therefore in violation of

the due process clause of the Fifth Amendment. The state court's finding that Mr. Lambert understood the meaning of the sentence of life without parole was an unreasonable determination of the facts in light of the evidence. The finding was clearly erroneous and Mr. Lambert has rebutted the finding by clear and convincing evidence. *See* discussion of Mr. Lambert's failure to understand the meaning of the sentence under the Investigation and Guilty Plea section *supra.*

## VI. CONCLUSION

The Court is well aware of the deferential standard under which it must review this habeas action and equally aware of its responsibility to grant a writ of habeas corpus when a petitioner proves that he is in custody in violation of the Constitution of the United States. Mr. Lambert's own statements indicate that he and his co-defendants committed a heinous crime. However, that does not diminish Mr. Lambert's rights to effective assistance of counsel and due process.

This Court concludes, based upon the entire record and the file, which has now been expanded by a two-day federal evidentiary hearing, that Mr. Lambert did not receive effective assistance of counsel and his due process rights were violated. Mr. Romero's representation of Mr. Lambert was below the objective standard of reasonableness. The cumulative errors related to Mr. Romero's investigation and advice on the plea were so serious that Mr. Lambert did not have the counsel guaranteed by the Sixth Amendment. Moreover, counsel's deficient performance prejudiced Mr. Lambert's defense as but for the errors, it would have been reasonably probable that Mr. Lambert would not have pleaded guilty but would have gone to trial. Mr. Lambert's plea was not know-

ing and voluntary and his due process rights were therefore violated.

Under the ethical imputed disqualification rule, the representation of Guillermo Romero and Thomas Earl of two co-defendants where one pleaded guilty in exchange for testimony against the other presented an actual conflict of interest that adversely affected Mr. Romero's representation of Mr. Lambert. However, because the Supreme Court has not applied the ethical imputed disqualification rule in Sixth Amendment analysis, this claim must fail for purposes of habeas relief. In addition, the claim related to the stipulation of the decline of juvenile court jurisdiction is foreclosed by Mr. Lambert's guilty plea.

Some of the state court's decisions were contrary to or an unreasonable application of clearly establish federal law or were unreasonable determinations of the facts in light of the evidence. The state court's determinations on the claims of constitutional violations were constrained by the fact that the state denied Mr. Lambert's request for more complete discovery and an evidentiary hearing. As a result, the state court did not have all of the relevant facts and was not in a position to evaluate the credibility of the persons with knowledge of the issues in controversy. However, the state court did have before it one of the most significant pieces of evidence of ineffective assistance of counsel, that Mr. Romero assisted Mr. Lambert to enter a guilty plea that gave him absolutely no benefit. It was an objectively unreasonable application of federal law to determine that Mr. Romero's representation did not constitute ineffective assistance of counsel. Mr. Lambert is therefore entitled to relief under 28 U.S.C. § 2254(d).

## VII. CERTIFICATE OF APPEALABILITY

An appeal of this Order may not be taken unless this Court or a Circuit Justice issues a certificate of appealability, finding that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (West 2002). This requires a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Based upon this Court's preceding analysis, the Court finds that reasonable jurists could find the district court's assessment of the constitutional claims—of ineffective assistance of counsel based upon counsel's stipulation to the decline of juvenile court jurisdiction and counsel's ethical conflict of interest— debatable or wrong and concludes that a certificate of appealability should issue on the claims. Accordingly,

**IT IS ORDERED** that:

1. Petitioner's Motions to Supplement the Record, filed November 15, 2002, **Ct. Recs. 144 and 146, are GRANTED.**

2. Mr. Lambert's Amended 28 U.S.C. § 2254 Petition for Habeas Corpus, **Ct. Rec. 3, is GRANTED.**

(a) The Sixth Amendment claim of ineffective assistance of counsel based upon counsel's investigation and advice on the plea and the Fifth Amendment due process claim that the plea was not knowing and voluntary are **sustained**.

(b) The claims of ineffective assistance of counsel based upon counsel's stipulation to the decline of juvenile court jurisdiction and counsel's ethical conflict of interest are **dismissed with prejudice**.

3. A conditional writ of habeas corpus shall issue commanding the State of Washington, in the case of *State of Washington v. Donald Eugene Lambert,* Superior Court of Washington for Grant County, No. 97–1–00415–5, to:

(a) Release Mr. Lambert from custody, OR

(b) Vacate Mr. Lambert's judgment of conviction and sentence; vacate Mr. Lambert's plea of guilty to one count of aggravated first degree murder; reinstate Mr. Lambert's plea of not guilty to two counts of aggravated first degree murder; appoint counsel to represent Mr. Lambert (counsel may not be from the Grant County Public Defenders, THE DEFENDERS, the Earl & Earl, P.S., law firm, or be an attorney with a conflict of interest based upon representation of a co-defendant); and schedule trial within ninety (90) days of the date of this Order.

(c) All further criminal proceedings are subject to this Court's Protective Order, filed June 14, 2002, **Ct. Rec. 103.**

The District Court Executive is directed to:

(a) File this Order;

(b) Enter judgment as specified above and issue a Writ of Habeas Corpus consistent with paragraph 3 above;

(c) Provide copies of this Order, the Judgment, and the Writ of Habeas Corpus to counsel.

***Counsel are advised that the 2254 Supplemental Order—Under Seal—Subject to Protective Order—shall be mailed to counsel.***

(d) **CLOSE THIS FILE**; and

(e) Inform the Ninth Circuit Court of Appeals, if a notice of appeal is filed, that a certificate of appealability is **GRANTED.**

### APPENDIX—FINDINGS OF FACT

The Court **FINDS** the following facts based upon the record and evidentiary hearing held June 11–12, 2002:

***Background Facts:*** On May 21, 1997, Homer and Vada Smithson were murdered in Grant County, Washington. On the same day detectives from the Grant County Sheriff's Office arrested Donald Lambert, Melanie Hinkle, Marcus David Wawers, and Adam Betancourt for the death of the Smithsons. Donald Lambert was 15½ years old at the time of his arrest. On May 21, 1997, Mr. Lambert was informed of his *Miranda* rights, he waived his rights and gave his statement to the police. No adult was present on his behalf and he was not represented by counsel. The other co-defendants also gave statements to the detectives regarding the murders.

In his statement to the police Mr. Lambert initially denied any involvement in the murders, but he then confessed that he and Adam Betancourt had both shot the Smithsons. Mr. Lambert admitted that, after breaking into the Smithsons' home, he shot at the victims, reloaded the gun and shot at Mrs. Smithson a second time. He stated that he then reloaded the gun again. Mr. Lambert admitted that he exited the house, observed through a window that Mrs. Smithson was on the phone, and he thought that she was calling the police. He said he heard Mrs. Smithson say "they are killing me, they are killing me." Mr. Lambert admitted that he then shot Mrs. Smithson six or seven times until his gun was empty.

On May 22, 1997, Mr. Lambert was arraigned in Grant County juvenile court on two counts of aggravated first degree murder for the deaths of the Smithsons. Two of Lambert's co-defendants, Marcus David Wawers and Melanie Hinkle were also charged in juvenile court with crimes stemming from their involvement in the murders.

On May 22, 1997, Mr. Lambert was appointed "the Grant County Public Defenders [Earl & Earl, Inc., P.S.]" to represent him in juvenile court. Also on May 22, 1997, THE DEFENDERS (contract indigent defense providers) were also appoint-

ed to represent Mr. Betancourt. Guillermo Romero entered an appearance as the attorney of record for Mr. Lambert in juvenile court. On May 27, 1997, Tom Earl entered an appearance for Adam Betancourt (age 16) who was charged as an adult in the Grant County Superior Court. On July 14, 1997, Mr. Betancourt pleaded guilty to two counts of non-aggravated first degree murder for the deaths of the Smithsons. He agreed to testify in hearings pertaining to Donald Lambert, Melanie Hinkle, and Marcus David Wawers. His sentencing was deferred until after Mr. Lambert's trial. The state moved the juvenile court for a decline of jurisdiction in the cases involving Lambert, Wawers and Hinkle.[8]

***Stipulation to Juvenile Court's Declination of Jurisdiction.*** Mr. Romero did little to prepare for Mr. Lambert's declination hearing: Mr. Romero admitted he did not contact Mr. Lambert's father; he did not interview Mr. Lambert's grandparents with whom Mr. Lambert had recently lived; he did not interview any of Mr. Lambert's teachers or any of his friends; he did not contact any of Mr. Lambert's football coaches; and, although he was aware that Mr. Lambert had previously resided in a juvenile facility, he did not obtain those records or any records of Mr. Lambert's suicide attempts or even his school records. TEH 169:6–25—170:1–3. Mr. Romero did not offer any strategic explanation for failing to conduct this background investigation of his client.

Mr. Romero did retain Dr. Mark Mays, a Spokane psychologist and attorney, to conduct a psychological evaluation of Lambert. Dr. Mays' report concluded that Lambert was extremely dangerous and had no mental problems. Record, Exh. 2. However, Dr. Mays was not given sufficient information by Mr. Romero from which to perform a meaningful evaluation as to some of the facts related to Mr. Lambert's background. *See* TEH 170:11–13. The insufficient information precluded Dr. Mays and Mr. Romero from further investigating the possibility that Mr. Lambert suffered from fetal alcohol syndrome; such investigation may have supported a diminished capacity offense or at a minimum would have informed defense counsel of the need to explain in greater detail the legal issues to Mr. Lambert.

Mr. Romero cannot recall his conversation with Mr. Lambert regarding the declination process and hearing. TEH 172:24—173:1. The Court cannot give credit to his statements as they have been inconsistent regarding the advice he gave to Mr. Lambert. As there is no evidence to the contrary, the Court finds Mr. Lambert's recollection of the assistance he received to be credible. Mr. Lambert testified that Mr. Romero: met with him only 15–20 minutes prior to the declination hearing regarding the declination process; never reviewed Dr. Mays' report with him; did not discuss the purpose of the hearing; did not discuss what evidence could be presented; did not discuss the consequences of being transferred to adult jurisdiction and advised him it was in his best interest to stipulate to the transfer of jurisdiction. TEH 311:8—313:22. Mr. Lambert testified credibly that he did not understand the consequences of the declination proceeding. TEH 313–314.

Mr. Romero stipulated to the declination of juvenile court jurisdiction and transfer of Mr. Lambert's case to adult jurisdiction.

---

8. All three of Mr. Lambert's co-defendants were convicted of crimes lesser than aggravated first degree murder and received sentences less than life imprisonment. EHE No. 230, p. 3.

Mr. Romero did not identify any real strategic advantage to the stipulation. At his prior deposition he said there was no advantage for Mr. Lambert to stipulate to the decline. Record, Exh. 15, pp. 158–59. The only advantage Mr. Romero could identify was without a substantial basis. He wanted to avoid providing access to Dr. Mays' evaluation before trial—but Mr. Romero gave the prosecution the Mays' report before trial, Record, Exh. 15, p 159; TEH 172:9–20, so no advantage was obtained.

***Investigation and Advice on Plea.*** Mr. Lambert was arraigned on two counts of aggravated murder in the first degree. Aggravated murder in the first degree, in violation of R.C.W. § 9A.32.030 and 10.95.020(8) has as an element the premeditated intent to cause the death of another person. Record, Exh. 1, p. 1. An order was entered appointing THE DEFENDERS to represent Mr. Lambert in Grant County Superior Court. Mr. Romero appeared to represent Mr. Lambert. Mr. Romero did not hire an investigator to investigate: (1) a possible diminished capacity defense related to Mr. Lambert's exposure to alcohol in utero; or (2) the background of the co-defendants, who agreed to testify against Mr. Lambert, for information to be used for impeachment purposes. TEH 174:13–14. Mr. Romero stated that he planned to begin the investigation of state witnesses after the trial has begun. TEH 210:6–13. The failure to hire an investigator and/or to investigate prior to trial was unreasonable.

Mr. Romero did not review all of the discovery provided to him which would have revealed that Detective Matney re-recorded at his home Mr. Lambert's May 22, 1997 statement to police. Detective Matney filed a report explaining his actions May 24, 1997. EHE No. 69A. The report was later found in Mr. Romero's file. TEH 431:7–19. The transcription of the re-recorded tape erroneously inserted a statement that Mr. Lambert said he planned to "shoot her," a damaging but false admission of premeditation, EHE No. 19, p. 50; when what Mr. Lambert actually said was he planned to "jack whatever, rob whatever." EHE No. 32 p. 28:1–3. Other than the false statement, there was no other mention by Mr. Lambert of a plan to shoot Mrs. Smithson. Not only was Mr. Romero not aware of the re-recording, he never compared the tape and the transcript to discover the transcription error. Still, Mr. Romero testified he had reviewed all the discovery. TEH 173:11–13. This inconsistency results in an inability of this Court to credit his testimony that he reviewed all discovery. Mr. Romero admitted that had he known of the re-recorded tape, he would have listened to it, hired an audio expert and challenged the admissibility of the evidence. TEH 181:4–15. The importance of the false admission was demonstrated by the fact that the prosecutor quoted the false admission of premeditation in his opening statement. EHE No. 61, p. 92:17–21. Mr. Romero admitted that as to proving premeditation, the most damaging evidence would be Mr. Lambert's admission of a plan to murder. TEH 185:1–7. Mr. Romero did not conduct a reasonable investigation when he failed to fully review discovery.

Mr. Romero asserts that he probably spent 200 hours preparing for trial, TEH 173:20—174:12, but he has no notes to support his preparation or what he discussed with Mr. Lambert. TEH 264:10–16. Mr. Romero had significant difficulty in remembering details regarding his representation of Mr. Lambert. Mr. Lambert testified credibly that Mr. Romero met with him less than 15 times. With the

exception of when they reviewed a video-tape of the crime scene, the visits were 10 to 20 minutes in length. TEH 307:23—308:8. Mr. Romero did not specifically remember if he reviewed discovery with Mr. Lambert, though he said he usually did that with defendants. TEH 173:16–19. However, Mr. Lambert testified that Mr. Romero did not review Mr. Lambert's statement with him, did not review the psychological reports, and did not review the two statements of Adam Betancourt. TEH 312, 315–18. Mr. Lambert's testimony is not contradicted by other evidence.

One month before trial, Mr. Lambert was ill-informed about the potential penalties he faced. He told Western State Hospital personnel on November 3, 1997, that he thought his age might prevent the jury from recommending the death penalty. EHE No. 18, p. 1 and 7. In fact, he was not eligible for this penalty. Mr. Lambert also told Western State personnel that what he should probably do was "go to prison, take classes, work to be a better person when I get out." EHE No. 18, p. 5. This statement indicates Mr. Lambert at that time, did not understand the meaning of life without parole and there is no evidence he was enlightened by advice from counsel at the time of the plea.

Mr. Lambert's trial began December 10, 1997. After the opening statements, Mr. Lambert passed Mr. Romero a note stating that he wished to enter a guilty plea. TEH 186:22—187:2. The note, EHE No. 35A, is subject to a Protective Order of this Court and is discussed and analyzed in the Supplemental Order of this Court, filed under seal. *See* 2254 Supplemental Order.

After a 13–minute recess, Mr. Lambert entered a plea of guilty to the charge of aggravated first degree murder of Mrs. Smithson. The transcript on the plea included only the following exchange regarding Mr. Lambert's understanding of the penalty:

> THE COURT: Mr. Lambert, the punishment imposed by law for that offense, whether a person is convicted after a trial or pleads guilty, is a mandatory term of life in prison without the possibility of parole.
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Understand that?
> THE DEFENDANT: Yes, sir.

EHE No. 20, p. 5:23–6:5. At the federal evidentiary hearing, Mr. Lambert explained that he thought life meant 20 years, "like in movies". TEH 359:20—340:11. That testimony is consistent with the note that he sent to counsel and supports a finding that he in fact did not understand the meaning of the maximum sentence. He erroneously believed the sentence was equivalent to 20 years.

Mr. Lambert testified credibly that he would not have pleaded guilty if he knew: (1) he had a chance to be convicted of a lesser charge; (2) he could challenge the false transcription regarding premeditation; (3) he would get the same sentence by pleading guilty to one count of aggravated first degree murder as if convicted of both counts at trial; and (4) his plea would result in spending the rest of his life in prison. TEH 340:12—341:15. It was objectively reasonable that a defendant in Mr. Lambert's position would not have pleaded guilty to one count of aggravated first degree murder, but would have proceeded to trial.

Michael Iaria, an expert witness for Mr. Lambert, concluded that Mr. Romero's representation was below an objective standard of reasonableness. TEH 374:18–19; 408:16—409:1. Mr. Iaria identified Mr. Romero's following omissions, *inter alia*, as falling below the standard: (1) failure to hire an investigator, TEH

390:23—391:16; (2) failure to investigate co-defendants' background for impeachment evidence with a plan that he would do this after the trial began, TEH 392:9–20; (3) failure to compare Mr. Lambert's taped statement with the prepared transcript and to hire an audio expert, TEH 393:15—394:9; (4) failure to make a recommendation to Mr. Lambert regarding the plea, TEH 399:12—400:13; and (5) failure to attempt to dissuade Mr. Lambert from entering a guilty pleas that had no benefit to him. THE 404:22—405:20. Mr. Iaria's opinions were not contradicted by other expert testimony and the Court adopts them.

***Conflict of Interest.*** In 1997, Guillermo Romero and Thomas Earl were associated in a group of attorneys hired as subcontractors by Douglas Earl, of Earl & Earl, P.S., to fulfill Douglas Earl's contract to provide indigent defense services for Grant County. TEH 55:7; 71:7–15. The group was called THE DEFENDERS. *Id.* Douglas Earl testified that the name was changed after 1996, TEH 51:12—54:3, but the court continued to use the name. EHE No. 14.

There were many indicia of the group being a "firm": (1) there was a single "boss", Douglas Earl, who could terminate the contract with the attorney at any time and not pay them. TEH 35:25—36:23; 154:2–19.(2) The attorneys were paid out of Douglas Earl's account, TEH 19:2–9.(3) There was a single investigator for the group of attorneys, TEH 37:2—38:18. (4) Douglas Earl handled client complaints made against THE DEFENDERS. TEH 30:25—31:3; EHE No. 57.(5) Tom Earl, one of the senior attorneys, supervised the other attorneys and reported concerns to Douglas Earl, at one time recommending that Guillermo Romero be terminated for poor performance. TEH 27:5–9; 75:20—

77:2. (6) When Guillermo Romero was suspended from the practice of law, other attorneys in THE DEFENDERS received the cases that would otherwise have been assigned to Mr. Romero. TEH 77:21—78:6. (7) Office space was shared at one location with Thomas Earl and Guillermo Romero having offices across the hall from each other. TEH 64:21—65:6. Mr. Romero did not maintain any other legal office. Record, Exh. 15, p. 105.(8) The sign outside the building said "Grant County Public Defenders." TEH 47:22–25.(9) The office equipment was shared by the attorneys, including the copier, TEH 49:1–3, the fax machine, TEH 85:23–25, and the computer, TEH 87:9—88:3. (10) The secretarial services were shared by the attorneys. TEH 84:1–25.(11) The case files were prepared by the shared secretary and retained by Earl & Earl. TEH 85:4–5; 99:9–11.(12) Business cards were prepared for the attorneys noting THE DEFENDERS although Douglas Earl thought that they were not used. TEH 56:11–15. David Boerner's expert opinion, which this Court adopts, was that THE DEFENDERS was a firm for conflict analysis. TEH 129:12—131:24.

There were also some indicia that the group of attorneys did not constitute a firm: (1) Thomas Earl testified credibly that he and Mr. Romero were not associates or partners in THE DEFENDERS or Earl & Earl, in any traditional sense. TEH 103:22—105:1. (2) Mr. Romero and Thomas Earl were not employees of Douglas Earl. TEH 55:6–14.(3) Mr. Romero and Thomas Earl had separate phone numbers. TEH 56:3–5.(4) Mr. Romero and Thomas Earl advertised separately from each other and from Earl & Earl. TEH 56:6–10.(5) Mr. Romero paid his own bar dues. TEH 215:1–4.(6) Mr. Romero and Thomas Earl also maintained

separate professional identities apart from THE DEFENDERS.

There is no direct evidence that Mr. Romero actively represented conflicting interests: (1) Though Mr. Romero and Thomas Earl had physical access to each others files, there is no evidence that either attorney accessed the files of the other. TEH 99:15–20; 150:12–14.(2) There is no evidence that Mr. Romero and Thomas Earl shared confidences regarding the case. TEH 150:7–11; 216:25—217:3. (3) There is no evidence that Thomas Earl or Douglas Earl influenced Mr. Romero's representation of Mr. Lambert. TEH 150:15–20. Mr. Lambert's expert, Mr. Boerner, confirmed the lack of direct evidence on these issues. Further, although Mr. Romero appeared May 20, 1997, at Adam Betancourt's initial appearance, he only advised Mr. Betancourt to request an attorney. EHE No. 15; TEH 93:1–8. In addition, Mr. Romero testified credibly that he felt that he had no duty to Adam Betancourt. TEH 221:10–12. Both Mr. Romero and Mr. Tom Earl as defense counsel of co-defendants testified credibly that they did discuss the Smithson murder case. TEH 96:16—98:10; TEH 217:4–10. Early in the criminal proceedings, however, Thomas Earl negotiated a plea agreement for Adam Betancourt to testify against Mr. Lambert in exchange for a reduced sentence. TEH 94:5–18. Mr. Romero admitted he never told Mr. Lambert he worked in the same office as Thomas Earl. TEH 211:20—212:13.

*Nature of Plea.* As noted *supra,* Mr. Lambert did not understand the law in relation to the facts. He did not know his sentence would be the same by pleading guilty to one count of aggravated first degree murder as if he went to trial and was convicted of two counts of aggravated first degree murder. Mr. Lambert further

was not fully aware of the direct consequences of his plea because he thought his sentence was equivalent to 20 years. He was not aware that the prosecutor's dismissal of one aggravated first degree murder count had absolutely no value to him because he would receive the same sentence of life without parole whether he was convicted of one or two aggravated first degree murders. Mr. Lambert's plea was not knowing, voluntary, and intelligent.

The above constitutes the Court's findings of fact.